UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------X
In re:

Corey S. Ribotsky                                               Case No.: 23-70583-ast
                                                                                                 Chapter 7

                                           Debtor.
-----------------------------------------------------------X

## MEMORANDUM OPINION DENYING DEBTOR'S MOTION FOR SUMMARY JUDGMENT AND GRANTING SEC'S MOTION FOR SUMMARY JUDGMENT

### *Issues Before the Court and Summary of Ruling*

Pending before this Court are the second motions of the Debtor, Corey S. Ribotsky ("Debtor" or "Ribotsky"), and a creditor, the Securities and Exchange Commission (the "SEC"), each seeking summary judgment on the nondischargeability of a debt owed to the SEC. This Court has previously granted partial summary judgment in favor of the SEC and denied Debtor's request. For the reasons stated herein, this Court grants summary judgment to the SEC and again denies summary judgment as to Debtor.

### *Jurisdiction*

This Court has jurisdiction over this core proceeding under 28 U.S.C. §§ 157(b)(2)(I) and 1334(b), and the Standing Order of Reference entered by the United States District Court for the Eastern District of New York, dated August 28, 1986, as amended by Order dated December 5, 2012.

### *Factual History[1]*

---

[1] The factual background and procedural history are taken from the pleadings, exhibits and other papers submitted by the parties and the public dockets in this case. Local Bankruptcy Rule 7056-1 requires that a party seeking summary judgment file a statement of facts the party alleges to be without a genuine dispute, and that each fact be

On September 28, 2011, the SEC filed a complaint against Debtor and various entities in which he allegedly had an interest in or control over in the District Court for the Eastern District of New York (the "District Court"). On August 17, 2013, the SEC filed an amended complaint which exclusively alleged violations of federal securities laws (the "Amended Complaint"). The District Court action was settled through a consent order signed on August 21, 2013 (the "Consent Order"). The Consent Order provided, *inter alia*, that Mr. Ribotsky neither admitted nor denied the SEC's allegations, and that he agreed "(i) not to take any action or to make or permit to be made any public statement denying, directly or indirectly, any allegation in the Complaint or creating the impression that the Complaint is without factual basis; and (ii) that upon filing of this Consent, Defendant hereby withdraws any papers filed in this action to the extent that they deny any allegation in the Complaint." The District Court entered a final judgment on November 13, 2013 (the "Consent Judgment"), ordering that "[Mr. Ribotsky] is liable for disgorgement of $12,500,000, representing profits gained as a result of the conduct alleged in the Complaint, together with prejudgment interest thereon in the amount of $1,000,000, and a civil penalty in the amount of $1,000,000 . . . ."

### *Procedural History Before this Court*

On December 17, 2014, Debtor filed a petition for relief (the "First Bankruptcy") under Chapter 7 of Title 11 of the United States Code (case no. 14-75575-AST) (the "Bankruptcy Code").

---

supported by a citation to admissible evidence in the summary judgment record as required by Rule 56(c) of the Federal Rules. *See* FED. R. CIV. P. 7056(e); E.D.N.Y. LBR 7056-1. Similarly, facts alleged by a party opposing summary judgment must be set out in a LBR 7056-1 statement supported by admissible testimonial or documentary evidence, and with citation to conflicting testimonial or documentary evidence as required by Rule 56(c); a party may not simply deny alleged material facts by a conclusory statement, or without citation to admissible evidence. This Court has not considered any fact alleged by either party which is not properly sourced or supported. This Court has also accepted as true properly supported facts alleged by either party which have not been properly refuted or challenged by Plaintiff or Defendant. *See* FED. R. CIV. P. 7056(e); E.D.N.Y. LBR 7056-1; *Meredith Corp. v. Sesac, LLC*, 1 F. Supp. 3d 180, 186 n.3 (S.D.N.Y. 2014).

On January 16, 2016, Debtor received a Chapter 7 discharge (the "Chapter 7 Discharge").

On October 10, 2022, Debtor filed another petition for relief, that time under Chapter 11 of the Bankruptcy Code (case no. 22-72781-AST) (the "Second Bankruptcy"). On January 20, 2023, the Court entered an order dismissing the Second Bankruptcy.

On February 17, 2023, Debtor filed his third and instant petition for relief, this time again under Chapter 7 of the Bankruptcy Code (the "Third Bankruptcy"). Dkt. 1.

Further procedural history of this dispute is addeemed by this Court in a Memorandum Opinion (the "Memorandum Opinion") issued on December 21, 2023, granting in part and denying in part the Debtor and the SEC's cross-motions for summary judgment. Dkt. 52; *In re Corey S. Ribotsky*, 23-70583-ast, 2023 WL 8854187 (Bankr. E.D.N.Y. Dec. 121, 2023). The Court held, *inter alia*, that the civil penalty portion of the Consent Judgment, $1,000,000 plus prejudgment interest, was nondischargeable under section 523(a)(7) of the Bankruptcy Code, and further held that neither party met its summary judgment burden for the rest of the Consent Judgment under section 523(a)(19).

On January 12, 2024, the Court issued a contested matter scheduling order setting an evidentiary hearing on the parties' remaining claims for April 22, 2024 (the "Evidentiary Hearing"). Dkt. 53.

On April 22, 2024, the Court issued an order vacating the Evidentiary Hearing and permitting both Debtor and the SEC to move for summary judgment a second time. Dkt. 83.

The SEC filed its motion for summary judgment on May 7, 2024. Dkt. 86. The SEC included declarations of various witnesses attesting to Debtor's conduct that preceded the Consent Judgment.

Debtor filed his motion on May 9, 2024. Dkt. 87. Debtor included various emails and pleadings from the District Court Action and Ribotsky's criminal trial.

The SEC filed its reply on May 21, 2024. Dkt. 95.

Debtor filed his reply on May 22, 2024. Dkt. 97.[2]

*Discussion*

*A. The Standard for Summary Judgment*

Rule 56(c) of the Federal Rules of Civil Procedure, as incorporated by Bankruptcy Rule 7056(c), provides that summary judgment should be granted to the moving party if the Court determines that "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 n.4 (1986) (quoting FED. R. CIV. P. 56(c)) (internal quotation marks omitted). A movant has the initial burden of establishing the absence of any genuine issue of material fact. *See id.* at 322–23. A fact is "material" if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). An issue of fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* If the movant meets its initial burden, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249–50 (internal citations omitted).

---

[2] Debtor's counsel filed a letter on May 22, 2024, explaining that the reply was one day late due to a PACER outage, but that the reply was timely served on the SEC. Dkt. 98.

The Second Circuit has repeatedly noted that, "[a]s a general rule, all ambiguities and inferences to be drawn from the underlying facts should be resolved in favor of the party opposing the motion, and all doubts as to the existence of a genuine issue for trial should be resolved against the moving party." *Brady v. Town of Colchester*, 863 F.2d 205, 210 (2d Cir. 1988) (citing *Celotex Corp.*, 477 U.S. at 330 n.2 (1986) (Brennan, J., dissenting)); *see also Tomka v. Seiler Corp.*, 66 F.3d 1295, 1304 (2d Cir. 1995). "If, when viewing the evidence produced in the light most favorable to the non-movant, there is no genuine issue of material fact, then the entry of summary judgment is appropriate." *Pereira v. Cogan*, 267 B.R. 500, 506 (S.D.N.Y. 2001).

### B. Nondischargeability Pursuant to Section 523(a)(19)

In relevant part, section 523(a)(19) prevents an individual debtor from being discharged from any debt that:

> (A) is for—(i) the violation of any of the Federal securities laws . . .; and (B) results, before, on, or after the date on which the petition was filed, from—(i) any judgment, order, consent order, or decree entered in any Federal or State judicial or administrative proceeding; [or] (ii) any settlement agreement entered into by the debtor . . . .

11 U.S.C. § 523(a)(19).

Both subsections 523(a)(19)(A) and (B) must be satisfied to hold the debt nondischargeable. *See Ribotsky,* 2023 WL 8854187; *Blake v. Fusco* (In re *Fusco*), 641 B.R. 438, 455 (Bankr. E.D.N.Y. 2022). As the Court held in its Memorandum Opinion, the only issue still pending before the Court is whether the SEC can demonstrate a violation of a federal securities law as required by subsection (A).

**The summary judgment evidence proves Debtor's conduct violates Section 523(a)(19)(A) as a matter of law**

Debtor correctly again argues that the Consent Judgment makes no finding of fact or conclusion of law, and in and of itself cannot support a finding of a violation of securities law as

required by section 523(a)(19)(A). Debtor then argues that the SEC's declarations of witnesses regarding events that occurred almost fifteen years ago are either incredible or stale.

This argument fails for two primary reasons. First, the SEC has provided undisputed evidence of certain securities law violations by Debtor without wholly relying on the testimony of the one witnesses whose credibility Debtor calls into question. Secondly, "[b]road, conclusory attacks on the credibility of a witness will not, by themselves, present questions of material fact." *Island Software & Computer Serv., Inc. v. Microsoft Corp.*, 413 F.3d 257, 261 (2d Cir. 2005). "[W]ithout affirmative evidence warranting an adverse inference, [the Court will not] disregard [] uncontroverted assertions." *Id.* at 262.

As noted, Debtor is prohibited by his agreement in the Consent Judgment from denying the allegations of the Amended Complaint or arguing they have no factual basis. This Court's Memorandum Opinion set forth that the SEC's first motion for summary judgment was denied in part because there was no evidence before the Court that supported the allegations contained within the Amended Complaint, the Consent Order and Consent Judgment. *Ribotsky*, 23-70583-ast, 2023 WL 8854187 at *4.

The SEC points to the Supreme Court's opinion in *Archer*, correctly noting that *Archer* allows bankruptcy courts to look beyond the record of the underlying proceeding and noting that Congress "intended the fullest possible inquiry" in ensuring that debts arising out of fraud are not discharged. *Archer v. Warner*, 538 U.S. 314, 321 (2003). Further, the SEC argues that *Archer* does not require a creditor to relitigate a fraud violation. While the SEC is not required to relitigate the underlying violations, the Consent Judgment without more did not sustain the SEC's burden to obtain summary judgment. However, when combined with evidence of Debtor's underlying conduct, it is enough for the SEC to succeed on its section 523(a)(19)(A) claim.

The SEC has now provided undisputed evidence, detailed below, of Debtor's multiple violations of federal securities law.

> a. *Debtor's Violation of Sections 206(1) and (2) of the Advisers Act of 1940 Regarding the Sale of AJW Qualified Debentures*

Sections 206(1) and (2) of the Advisers Act of 1940 (the "Advisers Act") makes it unlawful for an investment adviser to engage in any transaction or practice "which operates as a fraud or deceit upon any client." 15 U.S.C. § 80b-6. The misappropriation of clients' money is a clear violation of the Advisers Act. *See SEC v. Ahmed*, 308 F. Supp. 3d 628, 654 (D. Conn. 2018).

The SEC provided Debtor's deposition testimony which demonstrates Debtor's violation of sections 206(1) and (2). *See* Dkt. 62 attach. 1 (*hereinafter* "Ribotsky Depo I"); *see also* Dkt. 62 attach. 2 (*hereinafter* "Ribotsky Depo II"). Debtor was a principal of the N.I.R. Group ("NIR"). Ribotsky Depo I at 9. NIR offered various Private Investment in Public Equity ("PIPE") funds, which are "any private placement of securities of an already-public company that is made to selected accredited investors . . . wherein investors enter into a purchase agreement committing them to purchase securities." *Frequently Asked Questions About PIPES*, SEC.gov, https://www.sec.gov/info/smallbus/gbfor25_2006/pinedo_tanenbaum_pipefaq.pdf. One of NIR's PIPE funds was AJW Qualified Partner's, LLC ("AJW Qualified"). Ribotsky Depo I at 10. In this capacity, Debtor served as an investment adviser to AJW Qualified. Debtor was also the signatory for the bank account of Equilibrium Equity, LLC ("Equilibrium"). Ribotsky Depo I. at 61. Debtor invested in AJW Qualified by transferring debentures from Equilibrium to AJW Qualified, but the debentures remained in Equilibrium's name. Ribotsky Depo I at 73, 84. The debentures were sold, and the proceeds were kept in an Equilibrium account from which Debtor's personal expenses were paid, such as a car lease through Lexus Financial Services. Ribotsky Depo I at 62.

Therefore, there is undisputed evidence that Debtor misappropriated AJW Qualified's funds. As an investment adviser to AJW Qualified, Debtor misappropriated his client's funds in violation of the Advisers Act.

> b. *Evidence of Debtor's Violation of Section 10(b) of the Securities Exchange Act and Rule 10b-5 Thereunder Regarding Debtor's Omission of Material Facts to Investors of the AJW Funds*

Section 10(b) of the Securities Exchange Act (the "Exchange Act") and Rule 10b-5 prohibit the making of materially false statements or omissions in connection with the purchase or sale of securities. 15 U.S.C. § 78(j); 17 C.F.R. § 240.10b-5.

In June of 2007, AJW Qualified had $13 million in cash and pending redemption requests of $39.5 million. Dkt. 62 attach. 12 (*hereinafter* "Mele Declaration"). At that time, AJW Offshore, Ltd. ("AJW Offshore")—another of the NIR PIPE funds—had $123.9 million in cash with $28.9 million in pending redemption requests. *Id.* Debtor then combined AJW Qualified and AJW Offshore, with the redemption requests having at least "some relevance" to the decision. Ribotsky Depo II at 326. After the funds were combined, the AJW Offshore assets were used to pay AJW Qualified redemptions. Ribotsky Depo II at 328.

Further, Debtor's notice to investors of each fund before the comingling indicated only an intent to "ease administrative burden," and did not mention redemptions. Ribotsky Depo I at 323. Jesse Gottlieb, an investor of AJW Qualified, testified in an affidavit provided to this Court that if he had known about the redemption structure, he "would have sought to redeem all of [his] investments immediately." Dkt. 62 attach. 11 (*hereinafter* "Gottlieb Declaration"). Russell Olson, both a personal investor of AJW Qualified and an advisor to the investor Abu Dhabi Investment Council ("ADIC"), testified that if he had known about the redemption issues or the feeder

structure, he "would have been very loathe to invest" personally, or to advise ADIC to do so. Dkt. 62 attach. 5 at 211–13 (*hereinafter* "Olson Deposition II").

Here, at least part of Debtor's consideration in combining the funds was to be able to pay off the redemptions. The SEC has shown that Gottlieb, Olson, and the ADIC would have found the redemptions and feeder structure material to their investments, and that at least Gottlieb would have requested redemptions had he known Debtor's true purpose for combining the funds.

As such, the SEC has demonstrated a material omission in connection with the sale of securities in violation of section 10(b) of the Exchange Act and Rule 10b-5.

    *c. Evidence of Debtor's Misrepresentation of Material Facts in Violation of Section 10(b) of the Exchange Act and Rule 10b-5 Thereunder, Section 17(a) of the Securities Act of 1933, and Section 206(4) of the Advisers Act and Rule 206(4)-8 Thereunder*

Sections 17(a)(2) and (3) of the Securities Act of 1933 ("Securities Act") prohibit obtaining money or property through the making of materially false statements or omissions in connection with the offer or sale of securities or engaging in any transaction, practice or course of business which operates as a fraud upon a purchaser. 15 U.S.C. § 77(q). Section 206(4) of the Advisers Act and Rule 206(4)-8 prohibit the making of materially false statements or omissions to an investor or prospective investor. 15 U.S.C. § 80b-6(4); 17 C.F.R. § 275.206(4)-8.

    i.    *Misrepresentation of NIR's Sale Proceeds*

Olson, before investing in AJW Qualified, sent several due diligence questions to Debtor's firm, including what the proceeds were from converted stocks for October of 2008. Olson Deposition II at 249. Debtor replied that the firm averaged anywhere from $5 million to $15 million a month. Olson further testified that those estimates were "encouraging" in light of the 2008 financial crisis occurring at the time. Olson Deposition II at 250

In reality, the sales of the 10-month period up to October of 2008 averaged $913,000. Mele Declaration. This misrepresentation violates section 206(4) of the Advisers Act and Rule 206(4)-8 as Olson was a prospective investor. Further, because Olson ultimately invested with Debtor's firm, the misrepresentation also violated section 10(b) of the Exchange Act and Rule 10b-5.

*ii.    Misrepresentation of Defaults within the Portfolio*

In December 2008, Olson further inquired into defaults or bankruptcies within the portfolio as part of his due diligence. Olson Deposition II at 259–60.  Debtor replied that there were "[n]o defaults or bankruptcies." Olson Deposition II at 260.  In fact, there had been an increase in the number of portfolio companies defaulting on their debentures between 2006 and 2008. Dkt. 62 attach. 7 (*hereinafter* "Dworkin Declaration)".

Because Olson was both a prospective and eventual investor, these misrepresentations are violative of section 206(4) of the Advisers Act and Rule 206(4)-8, section 10(b) of the Exchange Act and Rule 10b-5, and  sections 17(a)(2) and (3) of the Securities Act. *See, e.g.*, *SEC v. Complete Bus. Sols Grp.*, 538 F. Supp. 3d 1309, 1332 (S.D. Fla. 2021) (misrepresentations concerning the default rate on issuer's loans to small businesses was material misrepresentation giving rise to section 10(b) and 17(a) liability).

*iii.    Misrepresenting the Reason for Delay in NIR's 2007 Audited Financial Statements*

In a June 30, 2008 email, a representative of Finles Capital ("Finles"), an NIR investor, asked Debtor why it had not yet received the 2007 annual report "although it was promised months ago." Ribotsky Depo II at 313.  Debtor responded that the audit was delayed due to NIR's "switch to the master/feeder structure" and that "new auditing standards for all funds [were] creating some backlog throughout the auditing community." Ribotsky Depo II at 313.  Finles responded, asking Debtor if this is the only reason for the delay, which Debtor confirmed. *Id.*

In fact, according to Daryl F. Dworkin, a former senior analyst at NIR, Debtor had advised NIR's "management team that the reason for the delay was that NIR's auditor was at odds with [Debtor] over the valuation of NIR's Funds, believing that [Debtor]'s higher valuations were not supportable." Dworkin Declaration. This misrepresentation of the reason for delay of the audit to Finles, an investor of NIR, is evidence of violations of section 10(b) of the Exchange Act, section 17(a) of the Securities Act, and sections 206(1) and 206(2) of the Advisers Act.

### *Conclusion*

For the above reasons, the Court has found that the SEC has met its burden for summary judgment by providing evidence of multiple securities law violations, each of which was alleged in the Amended Complaint and each of which was a foundation for the Consent Judgment. Debtor has failed to rise a genuine issue of material fact as to any of these violations, and had agreed "(i) not to take any action or to make or permit to be made any public statement denying, directly or indirectly, any allegation in the Complaint or creating the impression that the Complaint is without factual basis…." The Court has considered all of Debtor's other arguments and finds them to be without merit.

Therefore, the SEC shall submit a Judgment that the entire amount of the Consent Judgment is nondischargeable.



Dated: January 6, 2025
Central Islip, New York

_____
Alan S. Trust
Chief United States Bankruptcy Judge